**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

March 24, 2021

**VIA ECF**

Honorable Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:   *Stanley Warren v. Aba Noub, Ltd. d/b/a Joseph Pharmacy, et al.*
              <u>Civil Action No. 21 Civ. 00365 (SHS)</u>

Dear Judge Stein:

      This office represents named plaintiff Stanley Warren ("Warren" or "Plaintiff") with regard to his claims against Aba Noub, Ltd. d/b/a Joseph Pharmacy, Ava Kirellous Ltd. d/b/a Wellness Pharmacy, Sherif Eltahawy and Lizette Eltahawy (collectively, "Defendants" and, together with Plaintiff, the "Parties") in the above-referenced matter. This letter is submitted jointly with counsel for Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Counsel for the Parties respectfully submit that negotiated Settlement Agreement (attached as Exhibit A to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

     **I.**     **Introduction and Procedural History**

      The Named Plaintiff commenced this action by filing a Collective and Class Action Complaint on behalf of himself and all similarly situated employees of Defendants on January 14, 2021 seeking *inter alia*, alleged unpaid overtime premiums pursuant to the FLSA and the New York Labor Law ("NYLL") § 650 *et seq.* and damages for wage notice and wage statement violations pursuant to the NYLL. (*See generally* Dkt. No. 1 (the "Complaint")).

      The Parties agreed to extend Defendants' time to respond to the Complaint in order to have meaningful settlement negotiations. In order to facilitate settlement, on January 22, 2021, Plaintiff sent Defendants a damages analysis and initial settlement demand. Plaintiff's counsel and Defendants' counsel engaged in numerous discussions regarding the strengths and weaknesses of the Parties' claims/defenses over the phone and by email. Ultimately, the Parties agreed on a settlement as further outlined in the Settlement Agreement.

     **II.**    **The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Alleged Substantial Damages**

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Hon. Sidney H. Stein
Joint Settlement Fairness Letter
Page **2** of **6**

Throughout this litigation, the Parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Plaintiff alleges that although he frequently worked well in excess of forty (40) hours in a week, he was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) in a given workweek. Furthermore, Plaintiff alleges that he was not provided with a proper wage notice or wage statements as is required by the NYLL. Defendants have vigorously denied Plaintiff's allegations, including his claims for overtime, specifically his hours worked and wages paid (asserting payments were a salary with bonuses), alleged lack of documents (denying that they did not receive proper wage notices or wage statements). Defendants also assert a myriad of other factual/legal defenses to Plaintiff's alleged claims.

Due to the fact-intensive nature of the Plaintiff's claims, it is likely that substantive answers to these disputed issues would not be resolved until after significant discovery and motion practice, if not a trial. Based on these disputes the Parties engaged in good-faith, arms-length settlement negotiations, regarding not only Plaintiff's FLSA claims, but also his pendant state law claims.

As set forth above, Plaintiff created a damages analysis based on Plaintiff's best recollection of hours worked and wages paid. This analysis resulted in approximately $28,130.36 in unpaid overtime wages, plus an additional $10,000 in wage notice/wage statement statutory damages. Thus, the settlement amount (i.e., $42,500.00) represents all of Plaintiff's alleged unpaid overtime damages (not including liquidated damages, interest and penalties) and statutory damages. The settlement therefore represents a substantial portion of Plaintiff's alleged damages, which would be the anticipated recovery if Plaintiffs received a favorable outcome at trial under both federal and state law. While it does not compensate Plaintiffs for their alleged liquidated damages, penalties, and all of his attorneys' fees in addition to the damages, the Parties believe this is a fair recovery based on the risks associated with establishing liability on all claims and obtaining a judgment for the full calculated damages.

### III.   Settlement Terms

As set forth in the Settlement Agreement, the Parties have agreed to settle this action for a total settlement amount of $42,500.00 (the "Settlement Amount"). Of that amount, $14,749.99 is payable to Plaintiff's counsel, including $874.99 in expenses for counsel's costs for filing and service of the Complaint, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e., $13,875.00). The remaining $27,750.01 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement. The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release

Hon. Sidney H. Stein
Joint Settlement Fairness Letter
Page **3** of **6**

that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 percent . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a confidentiality provision; (2) does not contain a general release which is one-sided and does not apply to future claims; and (3) the Plaintiffs' attorneys' fees are standard. Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel."[1]

The agreement does include a mutual non-disparagement clause. The Parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiff and Defendants. Following *Cheeks*, several Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement). The mutual aspect of the non-disparagement provision benefits Plaintiff particularly as it requires Defendants to only provide the last position held by Plaintiff in the event that they receive a request for information from Plaintiff's employers or prospective employers seeking verification of employment.

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting Plaintiff to make truthful statements. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendant's interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a

---

[1] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

Hon. Sidney H. Stein
Joint Settlement Fairness Letter
Page **4** of **6**

"carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

### IV. Plaintiff's Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of March 24, 2021, Plaintiff's counsel had spent more than forty-three (43.15) hours in prosecuting and settling this matter, resulting in a lodestar of $14,485. *See* Pelton Aff. at Exhibit B. Plaintiff's counsel had spent $874.99 in actual litigation costs. *Id.* at Exhibit C. The portion of the settlement amount that Plaintiff seeks as attorney's fees (i.e., $13,875.00) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a negative multiplier of the lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreements. The retainer agreement between Plaintiff and his counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Although the applicable rates are those approved in the SDNY, the prevailing rates in the EDNY are similar, if not lower than those typically approved in the SDNY. *Allende v. Unitech Design, Inc*., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases," citing cases); *Torres v. Gristede's Operating Corp*., No. 04-CV-3316, 2012 U.S. Dist. LEXIS 127890, 2012 WL 3878144 at *3-4 (S.D.N.Y. Aug. 6, 2012) (awarding hourly partner rates of $500 and $550 in FLSA case and noting that "'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'") (internal citations omitted). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees.

### V. The Parties Believe that the Settlement Is Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."

*Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiff's claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over several months, exchange and review of documents and analysis by both Parties' counsel as well as multiple emails and telephone discussions between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial recovery of Plaintiff's alleged unpaid wages. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\* \* \* \* \*

In sum, we respectfully submit that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) fairly accounts for Plaintiff's possible recovery and Defendants' ability to mitigate or eliminate same; (2) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the Parties should you have any questions regarding this submission.

Hon. Sidney H. Stein
Joint Settlement Fairness Letter
Page **6** of **6**

Respectfully submitted,

| **PELTON GRAHAM LLC** | **FRANKLIN GRINGER & COHEN P.C.** |
|---|---|
| By:*/s/ Brent E. Pelton* | By: */s/ Joshua Marcus* |
| Brent E. Pelton, Esq. | Joshua Marcus, Esq. |
| 111 Broadway, Suite 1503 | 666 Old Country Road, Suite 202 |
| New York, New York 10006 | Garden City, New York 11530 |
| Tel.: (212) 385-9700 | Tel.: (516) 228-3131 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

Enclosures